UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-CV-00550-FDW-DSC

| | |
|---|---|
| JAYSON CONTINO, ET AL. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | ORDER |
| vs. ) | |
| ) | |
| FRONTIER ADJUSTERS, INC. ET AL., ) | |
| ) | |
| Defendants. ) | |
| ) | |

THIS MATTER is before the Court on Defendants' Motion to Stay Pending Arbitration and Request for Preliminary Hearing (Doc. No. 18) and Defendants' Motion to Stay the Initial Attorney's Conference (Doc. No. 34). Having carefully considered the record in the above-referenced case, the Court GRANTS Defendants' Motion to Stay Pending Arbitration (Doc. No. 18) and DENIES Defendants' Motion to Stay the Initial Attorney's Conference (Doc. No. 34) as moot.

On October 6, 2014, Plaintiffs filed the present action against Defendants alleging numerous causes of action based on issues arising out of six franchise agreements entered into between non-party Southern Claims Adjusting, Inc. ("Southern Claims"), a North Carolina corporation owned by Plaintiff Jayson Contino, and Defendant Frontier Adjusters, Inc., the terms of which Plaintiffs have individually guaranteed. (Doc. No. 1). Defendants move the Court for an order pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*., staying the case pending arbitration, and they additionally request that the Court hold a preliminary hearing on his motion. (Doc. No. 18). In support of their motion, Defendants assert that the franchise

1

agreements and personal guarantees are governed by Arizona law and contain an exclusive Arizona forum selection provision and mandatory binding arbitration clause. (Doc. No. 18). Defendants further assert that they have already commenced an arbitration proceeding before the American Arbitration Association in Arizona seeking the adjudication of all of the claims asserted in Plaintiffs' Complaint. (Doc. No. 18).

Specifically, Defendants assert that each of the six franchise agreements entered into by Defendant Frontier Adjusters, Inc., as the franchisor, and Southern Claims, as the franchisee, includes Section 23, which provides, in pertinent part:

> This Agreement is a written agreement evidencing a transaction involving commerce and is, therefore, subject to the terms and provisions of the Federal Arbitration Act Title 9 of the United States Code. Except for a controversy or claim relating to the use and/or ownership of any of the Marks, or the restrictive covenants contained in Section 6, any controversies or claims arising out of this Agreement or any other agreements between the parties or with regard to their interpretation, formulation or breach, shall be settled by binding arbitration conducted in Maricopa County, Arizona, according to the commercial rules of the American Arbitration Association as modified herein below.
>
> \*       \*       \*
>
> In the event that any controversy or claim arising from this Agreement also involves any officer, director, employee, member, partner, shareholder, representative, or agent of either party, then any such controversy or claim shall also be submitted to binding arbitration in the same manner as explained above.

(Doc. No. 18). Additionally, Defendants contend that each personal guarantee provides:

> The undersigned agree that any action, suit or proceeding to enforce this Guarantee or arising hereunder or concerning the interpretation of this Guarantee shall be subject to arbitration to the same extent as provided in Section 23 of the Agreement.

(Doc. No. 18).

## DISCUSSION

Under the Federal Arbitration Act ("FAA"), federal courts must stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. The FAA also authorizes a federal district court to issue an order compelling arbitration if there has been a failure to comply with an arbitration agreement. See 9 U.S.C. § 4. The FAA "manifest[s] a 'liberal federal policy favoring arbitration agreements.'" See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 1647, 1651 (1991) (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983)).

Additionally, under Arizona law, which appears to govern the franchise agreements and guarantees at issue, "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Ariz. Rev. Stat. Ann. § 12-1501. North Carolina law is in accord and provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for revoking a contract." N.C. Gen. Stat. § 1-569.6(a) (2007).

When an enforceable arbitration agreement exists, and when the issues in the dispute fall within its scope, a federal district court must stay the proceedings "when one party has failed, neglected, or refused to comply with an arbitration agreement … ." Gilmer 500 U.S. at 1651 (citing 9 U.S.C. § 4); see also Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002)

(citing United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001)) ("A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview.").

It appears to the Court that the arbitration agreements at issue are valid and enforceable under general principles of contract law and Arizona state law arbitration provisions. It also appears to the Court that Plaintiffs read and signed the franchise agreements and guarantees, which include the arbitration provisions listed above, representing that they agreed to and understood the terms of the documents. (Doc. Nos. 20-21, 23-32). Moreover, the terms of the franchise agreements make clear that the arbitration provisions apply to any claims arising from these agreements that involve Plaintiffs, in their capacities as officers, directors, employees, members, partners, shareholders, representatives or agents of Southern Claims. (Doc. No. 18).

Here, Plaintiffs' Complaint contains allegations that specifically relate to the parties' franchise agreements. (Doc. No. 1). Consequently, the specific issues in the dispute clearly fall within the scope of the arbitration clause. Further, Plaintiffs will not be prejudiced by enforcement of the arbitration provisions because the litigation is only in its beginning stages, and neither party has yet expended significant amounts of time or money.

Plaintiffs' clear, written and signed agreements to resolve disputes arising under the franchise agreements and guarantees through binding arbitration fully satisfies the requirements of the FAA and Arizona state law for enforceable arbitration agreements. Accordingly, Defendants' motion to stay pending arbitration is GRANTED. Because the Court finds that a hearing on this motion to stay is unnecessary, Defendants' request for a preliminary hearing on this matter is DENIED.

Finally, in light of the Court's decision on Defendants' motion to stay pending arbitration, the Court finds that arguments supporting Defendants' motion to stay the initial attorney's conference are moot. Accordingly, Defendants' motion to stay the initial attorney's conference is DENIED.

IT IS THEREFORE ORDERED that, for the reasons stated herein as well as those stated in Defendants' brief in support of their motion, Defendants' Motion to Stay Pending Arbitration (Doc. No. 18) is GRANTED and Defendants' Motion to Stay Initial Attorneys Conference (Doc. No. 34) is DENIED. Defendants' request for a preliminary hearing on the Motion to Stay Arbitration is DENIED. The parties are ORDERED to proceed to arbitration and submit reports to the Court every ninety (90) days. The dispute must be resolved within twelve (12) months from the date of this Order.[1] Failure to do so will result in Court action.

IT IS SO ORDERED.

Signed: November 6, 2014

Frank D. Whitney
Chief United States District Judge

---

[1] Under this Court's standing orders, the Court's timeline sets trial in civil cases approximately twelve (12) months from the filing of the complaint. Standing Order Governing Civil Case Management Before the Honorable Frank D. Whitney, Misc. No. 3:07-MC-47. The time limit is put in place to protect all parties' interests and promote judicial efficiency.